United States District Court
Southern District of Texas
**ENTERED**
June 10, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHANNON M. HENDERSON, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No.: 4:19-cv-2438 |
| § | |
| ANDREW SAUL, § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
| § | |
| *Defendant*. § | |

## MEMORANDUM AND RECOMMENDATION

Henderson filed this action under the Social Security Act, 42 U.S.C. §§ 405(g), for review of the Commissioner's final decision denying her request for disability insurance benefits. Henderson and the Commissioner moved for summary judgment. Dkt. 6, 8. After considering the filings, the record, and the applicable law, the Court **RECOMMENDS** Henderson's Motion be **DENIED**, the Commissioner's Motion be **GRANTED**, and the Commissioner's final decision be **AFFIRMED**.[1]

### I. Background

**1. Factual and Administrative History**

Henderson filed a claim for disability insurance benefits on May 9, 2016, alleging a disability onset date of October 1, 2012. Tr. 15. Henderson's alleged disabilities are Crohn's disease, cervical and thoracic disc protrusions, fibromyalgia, rheumatoid arthritis, adjustment

---

[1] Chief District Judge Lee Rosenthal referred these Motions to this Magistrate Judge for report and recommendation. Dkt. 2.

1

disorder with depressed mood, obesity, asthma, and hypertension. Tr. 19. The agency denied Henderson's claim on initial review on September 26, 2016 and on reconsideration on December 1, 2016. Tr. 76-105. An administrative law judge ("ALJ") held a hearing on August 23, 2018 at which Henderson and a vocational expert testified. Tr. 46-75. The ALJ denied Henderson's application for benefits on September 21, 2018. Tr. 15-29. The Appeals Council denied review on May 1, 2019, and the ALJ's decision became the final decision of the Commissioner. Tr. 1-5; s*ee* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

## 2. Standard for Review of the Commissioner's Decision

Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). When reviewing the Commissioner's decision, the Court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id*.

## 3. Disability Determination Standards

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." *Id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not

disabled.  At the second step, the ALJ must determine whether the claimant has a severe impairment.  *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant's impairment does not have a de minimis impact on her ability to work, she is not disabled.  *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).  The third step of the sequential analysis requires the ALJ to determine whether the claimant's severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § pt. 404, subpt. p, app. 1 [hereinafter "App. 1"].  If so, the claimant is disabled.  If not, the ALJ must determine the claimant's "residual functional capacity" (RFC), which is the claimant's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments.  *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).  At step four, the ALJ determines whether the claimant's RFC permits her to perform her past relevant work.  If the answer is no, the ALJ determines at step five whether the claimant can perform any other work that exists in the national economy.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  The claimant bears the burden to prove disability at steps one through four, but the burden shifts to the Commissioner at step five.  *Newton v. Apfel*, 209 F.3d at 452-53.

### 4. The ALJ's Decision

Based on these principles, as well as her review of the evidence presented at the hearing, the ALJ determined that Henderson met the insured status requirements of the Social Security Act through March 31, 2018, and that she has not engaged in substantial gainful activity since October 1, 2012. Tr. 18.  The ALJ further concluded that Henderson suffers from the following severe impairments: Crohn's disease, cervical and thoracic disc protrusions, fibromyalgia, rheumatoid arthritis, and adjustment disorder with depressed mood.  Tr. 19.  The ALJ concluded Henderson suffers from the following non-severe impairments: obesity, asthma, and hypertension.  Tr. 19.

The ALJ found Henderson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 after specifically considering her herniated discs under Listing 1.04, Crohn's disease under Listing 5.06, rheumatoid arthritis under Listing 14.09, and adjustment disorder with depressed mood under Listing 12.04. Tr. 19-21. The ALJ determined Henderson has the RFC for light work with additional limitations:

> [S]he cannot climb ladders, ropes or scaffolds and can occasionally climb ramps and stairs, stoop, bend, balance, kneel, crouch, and crawl. She cannot work around unprotected heights, dangerous moving machinery, open flames or large bodies of water, no commercial driving. She must avoid exposure to bright lights, such as direct sunlight and strobe lights. She must avoid exposure to loud noises, such as heavy traffic and constructions sounds, such as jackhammers. Regarding her mental limitations, she can understand, remember and apply information in order to carry-out work related activities regarding detailed but not complex instructions. She can maintain concentration, persistence and pace for 2-hour periods with customary breaks over an 8-hour workday. She cannot perform fast-paced production work and can occasionally interact with supervisors, coworkers, and the general public.

Tr. 21-22. Relying on the testimony of a vocational expert, the ALJ determined Henderson was unable to perform any past relevant work but that she had acquired skills from that past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. Tr. 27. For these reasons, the ALJ concluded Henderson is not under a disability as defined by the Social Security Act and denied her application for benefits. Tr. 27.

## II. Analysis

Henderson challenges the ALJ's finding, arguing two points of error. Dkt. 6 at 2. First, Henderson argues the ALJ erred by giving no weight to her treating physician's opinion that she is disabled. *Id*. Second, Henderson argues the ALJ erred by failing to consider side effects of Henderson's medications and their impact on her ability to perform full-time work. *Id*.

**1. The ALJ did not err in assigning no weight to the treating physician's opinion.**

Henderson first argues the ALJ erred by rejecting the opinion from her treating physician, Dr. Howard, that she suffers from a permanent disability due to her degenerative disc disease with spinal stenosis, rheumatoid arthritis, chronic migraines, and chronic pain syndrome. Tr. 691-92; Dkt. 6 at 5-19. The Court finds the ALJ did not err because Dr. Howard did not provide a medical opinion entitled to deference under the treating physician rule. 20 CFR § 404.1527(d)(1), (3) ("[The ALJ is] responsible for making the determination or decision about whether [the claimant meets] the statutory definition of disability. . . . [The ALJ] will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ."

The record indicates Henderson saw Dr. Howard only twice, once on December 12, 2017 and once on March 2, 2018. Tr. 1074-76, 1080-82. In December, she saw Dr. Howard for a general physical and labs. Tr. 1074-76. She reported to Dr. Howard that overall she was doing well. Tr. 1074. She reported that she sees specialists for Crohn's Disease and autoimmune disorders and has a history of abdominal and pelvic pain and uterine cancer. *Id*. She reported taking medication for depression and chronic pain, but that "[s]he feels it is under good control." *Id*. She did not voice any other complaints. *Id*. Henderson's physical exam was unremarkable and revealed a normal range of motion in all extremities and muscles were not tender to palpation. Tr. 1075.

Henderson saw Dr. Howard again three months later, on March 2, 2018. Tr. 1080-82. Dr. Howard's notes for the March appointment reflect that she saw Henderson so that she could complete a release to assist Henderson with receiving SNAP benefits. Tr. 1080. Dr. Howard's March 2, 2018 notes regarding the history of Henderson's present illness state that Henderson has a permanent disability due to her degenerative disc disease and spinal stenosis and that she is

5

unable to work.  *Id*.  The same notes state that, while Henderson's pain medication regimen does not always "work[] completely," it "makes her pain manageable."  *Id*.   Dr. Howard's physical exam found Henderson had a decreased range of motion in the spine with forward flexion, mild tenderness along her spine, and slightly decreased range of motion in her neck.  Tr. 1081.  Dr. Howard's plan with respect to Henderson's spinal stenosis and degenerative disc disease was to continue  of continuing the same pain medications and therapies and keeping her appointments with specialists.  *Id*.

The form Dr. Howard completed on March 2, 2018 reflects that Henderson applied for benefits from the Texas Health and Human Services Commission and states that federal and state regulations require persons receiving benefits to work unless physically or mentally incapable of doing so.  Tr. 691.  Dr. Howard checked the boxes on the form stating that Henderson is "unable to work" and that the "disability is permanent."  *Id*.  Dr. Howard listed Henderson's "disabling diagnosis" as degenerative disc disease with spinal stenosis, rheumatoid arthritis, chronic migraines, and chronic pain syndrome.  Tr. 692.  Presumably because Dr. Howard opined that Henderson permanently disabled, she did not complete the section of the form which asked how much time Henderson can spend doing various postural and exertional tasks.  Tr. 691.  The check-the-box form contains no support for Dr. Howard's conclusion that Henderson is permanently disabled and unable to work.  Tr 691-92.

A treating physician's statements that a claimant is "disabled" or "unable to work" are not entitled to any deference.  *Neely v. Barnhart*, 512 F. Supp. 2d 992, 997 (S.D. Tex. 2007) (citing *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citations omitted)).  The ALJ is "responsible for making the determination or decision about whether [a claimant meets] the statutory definition of disability" and such a determination is solely within the discretion of the ALJ.  20 C.F.R. §

404.1527(d)(1); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citations omitted) (explaining "determinations that [a claimant] is 'disabled' or 'unable to work'" are legal conclusions reserved to the Commissioner); *Neely v. Barnhart*, 512 F. Supp. 2d at 997 (quotations omitte) ("[T]he ALJ has sole responsibility for determining a claimant's disability status."). An ALJ is not required to give great weight to a physician's conclusion that a claimant is disabled because such an opinion has "no special significance" and is not considered a "medical opinion" entitled to great weight within the meaning of the regulations. 20 C.F.R. § 404.1527(d)(3); *Miller v. Barnhart*, 211 F. App'x 303, 305 (5th Cir. 2006) ("[A]n ALJ need not give special weight to conclusions about disability or ability to work . . . ."); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citation omitted). Because Dr. Howard's opinion that Henderson is not disabled is an opinion ultimately reserved to the ALJ, the ALJ did not err in assigning little weight to the opinion.

Henderson also argues the ALJ erred by failing to consider each of the § 404.1527(d) factors in assigning no weight to Dr. Howard's opinion. Dkt. 6 at 18-19. The ALJ generally must consider the § 404.1527(d) factors only with respect to medical opinions of treating physicians. *Garza Mundy v. Berryhill*, Case No. 1:18-cv-172, 2019 WL 5269177, at *5 (S.D. Tex. Sep. 12, 2019), *adopted by* 2019 WL 5264651 (Oct. 17, 2019) (citations omitted) ("When a physician's opinion is one that is reserved for the Commissioner, an ALJ is not required to consider the relevant [§ 404.1527(d)] factors in evaluating medical opinions."). As discussed above, the check-the-box form stating that Henderson is permanently disabled and unable to work does not constitute a "medical opinion" within the meaning of the regulations. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Therefore, the ALJ was not required to discuss the § 404.1527(d) factors. *Id*. ("Assuming . . . the ALJ did not consider the six [§ 1527(d)] factors, he was not required to do so

with respect to the doctor's conclusion that [the claimant] was unable to work. The ALJ must consider the six factors . . . only with respect to the *medical opinions* of treating physicians.").

### 2. The ALJ did not err in failing to discuss Henderson's medications and their side-effects.

In her second point of error, Henderson argues the ALJ erred by failing to discuss her lengthy list of medications, their side-effects, and their impact on her ability to perform full-time work. Dkt. 6 at 19. 20 C.F.R. § 404.1529 requires the ALJ to consider six factors in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Among the six factors to be considered is the "type, dosage, effectiveness, and side effects of any medication" used by a claimant. *Id*. § 404.1529(c)(3)(iv). SSR 16-3p provides guidance for evaluating "statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims . . . ." SSR 16-3p, 2017 WL 5180403, at *1. According to SSR 16-3p, "[i]f there is no information in the evidence of record regarding one of the factors, [the ALJ] will not discuss that specific factor in the determination or decision because it is not relevant to the case." SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); *see also*, *Eovaldi v. Astrue*, 729 F. Supp. 2d 848, 862 (S.D. Tex. 2010) (citations omitted) (discussing SSR 96-7p, 1996 WL 374186 (July 2, 1996) (finding the ALJ did not err in failing to consider a claimant's allegations of side effects where there was no medical testimony or evidence in the record corroborating the side effects).[2]

In this case, the ALJ acknowledged his duty to consider the factors listed in 20 C.F.R. § 404.1529 and SSR 16-3p but did not explicitly discuss any medication side effects or their impact

---

[2] SSR 16-3p superseded SSR 96-7p and was intended to clarify that subjective symptom evaluation is not an examination of an individual's character. SSR 16-3p, 2017 WL 5180304, at *2; SSR 96-7p, 1996 WL 374186. SSR 16-3p removed the term "credibility" from the regulation and instructs ALJs to consider medical and other evidence to evaluate the intensity and persistence of symptoms to determine how a claimant's symptoms might limit her capacity for work. SSR 16-3p, 2017 WL 5180304, at *2 n.1. SSR 16-3p did not change the ALJ's responsibilities with respect to considering a claimant's medication side effects.

on Henderson's RFC. Tr. 22-26. In her brief, Henderson identifies ten medications and their potential side effects: Esgic, Tramadol, Rapaflo, Hydroxyzine, Vaginal Valium, Urogesic Blue, Losartan HCTZ, Librax, Cymbalta, and Zofran. Dkt. 6 at 22-23. However, the medical record contains no evidence demonstrating that medication side effects have any impact on Henderson's RFC or ability to perform work.

Significantly, the record shows that when Henderson suffered from medication side effects, she reported them to her physicians and the medications causing those side effects were discontinued. Tr. 288 (Topamax discontinued due to side effects), 294 (amitriptyline discontinued due to side effects of insomnia and eye twitching), 344 (did not tolerate Remicade well so the medication was changed), 708 (Celebrex discontinued due to rash), 744 (refused Depakote due to side effects she experienced from it in the past), 764 (Amrix discontinued because not tolerated), 836 (Elmiron discontinued due to side effects). In other instances, Henderson reported initial side effects that later resolved. For example, she began taking Cymbalta in October 2016 and complained of side effects such as urinary retention and constipation in October and November 2016. Tr. 688. However, by January 2017, Henderson was still taking Cymbalta, *denied side effects,* reported improvement in her symptoms, and expressed a desire to increase her dose of Cymbalta. Tr. 713. Likewise, although Henderson testified that Tramadol caused her nausea, the medical record contains no mention of any side effects from Tramadol. Tr. 333; *see also Eovaldi v. Astrue*, 729 F. Supp. 2d at 862 (S.D. Tex. 2010) (citations omitted) ("Plaintiff's testimony [regarding side effects] alone is insufficient to establish that the ALJ should have explicitly addressed the side effects of medication on Plaintiff's ability to do work.").

Furthermore, the record is devoid of any evidence that Henderson suffered side effects from the remaining medications she identifies. For example, Henderson reported successful

treatment and no side effects with Vaginal Valium, Urogesic Blue, and Rapaflo. Tr. 668. The record also includes no discussion of side effects related to Esgic, Hyroxyzine, Losartan HCTZ, Librax, or Zofran. Because the record does not include evidence of side effects which might impact Henderson's ability to work, the ALJ did not err by failing to explicitly discuss medication side effects. *See* SSR 16-3p, 2016 WL 1119029, at *8.

### III. Conclusion

For the reasons discussed above, the Court **RECOMMENDS** the Commissioner's Motion be **GRANTED**, Henderson's Motion be **DENIED**, and the Commissioner's final decision be **AFFIRMED**.

The Clerk of Court shall send copies of the Memorandum and Recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on June 10, 2020 at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge